**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | | |
|---|---|---|
| JOANN OCKINGA,<br><br>Plaintiff,<br><br>v.<br><br>ALYSSA MUZQUIZ, in her individual capacity,<br><br>and<br><br>CITY OF CHEYENNE, WYOMING, A MUNICIPALITY,<br><br>Defendants. | ) | 2:24-cv-00240 |

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

COMES NOW, Plaintiff, Joann Ockinga, by and through undersigned counsel, and hereby files this Complaint against the above-named Defendants and demands a trial by jury to decide her claims for relief. For her claims of relief against Defendants, Plaintiff alleges the following:

## SUMMARY OF CLAIMS

1) Plaintiff Joann Ockinga's claims against Defendant Cheyenne Police Department (hereinafter "CPD") Officer Alyssa Muzquiz and Defendant City of Cheyenne arise under 42 U.S.C. § 1983. CPD Officer Alyssa Muzquiz violated

Ms. Ockinga's Federal Constitutional rights when, as on on-duty CPD officer acting under color of state law, she forcefully removed Ms. Ockinga from her vehicle and injured Ms. Ockinga without legal justification. Officer Muzquiz broke Ms. Ockinga's ankle, threw Ms. Ockinga onto her right knee, which had recently been replaced in a major surgery, and bruised Ms. Ockinga's arms. Ms. Ockinga was committing no crimes, but rather had called the Cheyenne Police Department to report that the vehicle she was in had bumped into another vehicle while backing out of a parking spot at the Cheyenne Frontier Mall. Officer Muzquiz responded to the call, and unnecessarily, unreasonably, and violently assaulted Ms. Ockinga, who is intellectually disabled. Officer Muzquiz then arrested Ms. Ockinga and charged her with interference with a peace officer. Ms. Ockinga is still in pain and has been permanently traumatized by the incident.

2) Based on information and belief, the Cheyenne Police Department has inadequately trained its officers, and such inadequate training led to the assault on Ms. Ockinga. The inadequate training was a proximate cause of Ms. Ockinga's injuries, as were Officer Muzquiz's unreasonable actions.

## PARTIES, JURISDICTION, AND VENUE

3) Plaintiff Joann Ockinga is an individual residing in Wheatland, Platte County, Wyoming.

4) At the time of the incident, Defendant Alyssa Muzquiz was an employee and officer of the Cheyenne Police Department, a local governmental law enforcement agency located in Laramie County, State of Wyoming, and District of Wyoming. At the time of the incident, Defendant Alyssa Muzquiz was on-duty for CPD and acting under color of state law.

5) City of Cheyenne is a local municipality overseeing the Cheyenne Police Department, a local law enforcement agency, and its employees.

6) All incidents occurred in Cheyenne, Laramie County, Wyoming.

7) This Court has personal jurisdiction over all Defendants, as they all worked or had their principal place of business in the District of Wyoming at the time of the incident and the incident took place in the District of Wyoming, thereby satisfying personal jurisdiction.

8) This Court has subject matter jurisdiction over the claim, as it presents a federal question under 42 U.S.C. § 1983. Article III, § 2 of the United States Constitution provides that federal judicial power shall extend to all cases "arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority." This constitutional provision authorizes Congress to give federal courts such jurisdiction. The congressional grant of federal question jurisdiction is codified at 28 U.S.C. § 1331, which provides, "The

district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

9) Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) as "a substantial part of the events" on which this claim is based occurred in Cheyenne in the District of Wyoming.

## FACTS

10) On July 8, 2023, Ms. Ockinga travelled with her two daughters and son-in-law from Wheatland, Wyoming to Cheyenne, Wyoming to watch a movie and shop at Cheyenne Frontier Mall. Ms. Ockinga, her two daughters, and her son-in-law all have learning disabilities.

11) After shopping and watching the movie, Ms. Ockinga and her family members got in their car in the parking lot and backed up. Although Ms. Ockinga had driven to Cheyenne, she asked her son-in-law to drive home, as she was tired. As Ms. Ockinga's son-in-law backed up, he relied on the back up camera, which did not properly alert him of the truck behind him, and he bumped into the truck at a low speed. Ms. Ockinga was unsure how to respond, so she called a friend who advised her to report the incident to the police. Ms. Ockinga then called 911 to report that her son-in-law had bumped into the other vehicle.

12) CPD Officer Muzquiz responded as an on-duty police officer. Officer Muzquiz told Ms. Ockinga to get her insurance information so she could fill out a

form and leave it with the truck. Ms. Ockinga looked through her glove compartment but was unable to find a current insurance card. While looking for her insurance information, Ms. Ockinga was nervous and having difficulty comprehending Officer Muzquiz's instructions.

13) At some point, Officer Muzquiz ordered Ms. Ockinga's son-in-law, who is also intellectually challenged, to get out of the vehicle. Ms. Ockinga, who had been told by her son-in-law's mother that that her son-in-law should not talk to police officers without his mother present due to his lack of intellectual ability, told Officer Muzquiz her son-in-law could not talk to her. Officer Muzquiz became agitated and told Ms. Ockinga to stop interfering. Ms. Ockinga's son-in-law then got out of the vehicle, where Officer Muzquiz told him that he could not drive without insurance, and if he drove away Officer Muzquiz could arrest him. There was no reason to order Ms. Ockinga's son-in-law out of the vehicle and threaten to arrest him. When Ms. Ockinga got out of the vehicle because she was concerned about Officer Muzquiz talking to her son-in-law and threatening to arrest him, Officer Muzquiz ordered Ms. Ockinga to get back in the vehicle.

14) While Ms. Ockinga was getting back into the front passenger seat of her vehicle, Officer Muzquiz forcefully removed Ms. Ockinga from the vehicle.



15) When Officer Muzquiz used force against Ms. Ockinga, Ms. Ockinga had committed no crime, did not pose an immediate threat to the safety of the officers or others, and was not actively resisting arrest or attempting to evade arrest by flight. Ms. Ockinga had not touched Officer Muzquiz and was in fact some distance away from Officer Muzquiz. Ms. Ockinga was not engaging in any threatening behavior or assaultive language. She had no weapon. Ms. Ockinga posed no threat to Officer Muzquiz. Rather, Officer Muzquiz crossed the parking lot to engage with Ms. Ockinga, and immediately forcefully removed Ms. Ockinga as Ms. Ockinga was getting back into her vehicle, which is what Officer Muzquiz had instructed her to do.

16) In the process of forcefully removing Ms. Ockinga from her vehicle, Officer Muzquiz broke Ms. Ockinga's right ankle and caused contusions and lacerations to Ms. Ockinga's left knee, which had recently undergone a total surgical replacement. Officer Muzquiz also caused various bruises and contusions to Ms. Ockinga's arms. Officer Muzquiz caused Ms. Ockinga to suffer other bodily pain, shame, embarrassment, and trauma by throwing Ms. Ockinga to the ground.






17) Officer Muzquiz's use of force was excessive and objectively unreasonable.

18) Officer Muzquiz then handcuffed and arrested Ms. Ockinga, charging her with interference with a peace officer, all while Ms. Ockinga cried out and writhed in pain on the pavement in front of her children.





19) After Ms. Ockinga was handcuffed and lying on the ground, Officer Muzquiz and Supervising Officer Kaitlin Peterson had the following conversation as to whether Officer Muzquiz should cite or arrest and jail Ms. Ockinga:

> Kaitlin Peterson: Do you want to take her or do you want to cite her? It's up to you.
>
> Alyssa Muzquiz: You don't think I should take her at this point with the use of force?
>
> Peterson: What?
>
> Muzquiz: Should I take her with the use of force?
>
> Peterson: It's entirely up to you, it can go either way. It doesn't matter if she has special needs, I don't care what Norris says. (Two male officers laugh). Just because I don't want Norris to talk about it later, you can write her a citation. Entirely up to you. You don't have to write a PC affidavit for it. You can just write citations through the circuit court for it. I would, just because there was use of force. And just because Norris will give you crap later for doing a PC aff [sic] when there is special needs. If there is a PC aff [sic] I have to sign off on it and Norris has to sign it. It sounds like she does have to go to the hospital, too.

20) During the exchange, other CPD officers can be heard in the background laughing and joking. One male officer says he feels terrible "because he missed this." One officer can be heard saying to another male officer "She's doing better than the guy I arrested." The other male officer responds, laughing "Oh nice, I forgot about that." Meanwhile, Ms. Ockinga is writhing in pain on the ground, crying "Can I lay down please? I hurt. Just kill me. Just kill me. I didn't realize I

did something wrong. I love my kids. I was just trying to help him, I was stressed, his mom told me not to let him go."

21) All of the above is captured on video on the responding officers' body worn cameras, except for the portion of the video where CPD Officer Muzquiz throws Ms. Ockinga on the ground and breaks her foot. That portion of the video is missing, replaced by a green screen that looks like this:



22) While in CPD custody, Ms. Ockinga was transported to Cheyenne Regional Medical Center, where she underwent x-rays, which revealed she had suffered an acute, transverse, nondisplaced malleolar fracture to her right ankle.




23) In other words, her foot was broken when she was torn out of her car and thrown on the ground. Her foot looked like this:





24) Officer Muzquiz also inflicted cuts and lacerations to Ms. Ockinga's left knee, which had recently been replaced in a major surgery. Ms. Ockinga's knee looked like this:




25) Officer Muzquiz also severely bruised Ms. Ockinga's arms in ripping her from her vehicle, throwing her to the ground, and restraining her. Ms. Ockinga's arms looked like this:







26) After assaulting and handcuffing Ms. Ockinga, Officer Muzquiz charged Ms. Ockinga with misdemeanor "interference with a peace officer." Ms. Ockinga repeatedly begged and pleaded with the officers not to take her to jail. Ultimately, Ms. Ockinga was taken to jail at the Laramie County Detention Center, where she was in custody from Saturday until Monday, when she could be seen by the Court.

27) The misdemeanor charge of interference was later dismissed by the Laramie County District Attorney's Office, but not before Ms. Ockinga spent three nights and two days in jail and was forced to attend several court appearances over the next several months.

28) Ms. Ockinga was unable to return to work for several months, where she is required to be on her feet for over twelve hours at a time working in the kitchen of the Wheatland Hospital. She suffered stress and humiliation, with many of her

co-workers and supervisors blaming Ms. Ockinga for missing work and accusing her of being a criminal. Although she has now been able to return to work, her ankle is still painful and she continues to suffer emotional pain, anxiety, and fear due to the assault. This event has caused her Post Traumatic Stress Disorder and acute stress reaction.

29) Ms. Ockinga has a learning disability, which is a mental impairment that substantially limits one or more major life activities and has a history of such an impairment. She had an Individualized Education Program (IEP) from elementary school through high school. She was in Special Education classes. She participated in the Special Olympics, as she was unable to participate in other sports. Her father and her children have learning disabilities. Her learning disability impairs her ability to work. She has difficulty processing information and instructions. Her learning disability affects her cognitive functioning like thinking and concentrating. Her learning disability affects tasks of her daily life like working, reading, learning, and communicating.

30) Officer Muzquiz unnecessarily escalated a simple accident in a parking lot into a situation where Ms. Ockinga was violently assaulted. Based on information and belief, the City of Cheyenne inadequately trains its officers on how to de-escalate, rather than escalate, interactions with citizens. This inadequate training was a proximate cause of the unreasonable seizure of Ms. Ockinga.

31) As a result of this incident, Ms. Ockinga has sustained injuries, including past and future physical harm, past and future emotional and mental harm, including fear, humiliation, and mental anguish, past and future costs of medical care, and lost wages.

## CLAIMS FOR RELIEF

### I. FIRST CLAIM FOR RELIEF – DEPRIVATION OF CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. § 1983 – EXCESSIVE FORCE – DEFENDANT MUZQUIZ

32) For this Claim of Relief, Plaintiff incorporates the facts stated herein, which provide the basis for the claim that CPD Officer Muzquiz, while on-duty and acting under color of State law, statute, ordinance, regulation, custom, or usage of the State of Wyoming, deprived Joann Ockinga, Plaintiff and a citizen of the United States and person within the jurisdiction thereof, of Ms. Ockinga's rights, privileges, or immunities secured by the United States Constitution and federal laws, to wit:

33) CPD Officer Muzquiz, while on duty, deprived Ms. Ockinga of her Fourth Amendment right not to be subjected to excessive force by violently ripping her out of her car, throwing her to the ground, and breaking her ankle and injuring her knee and arms without legal justification.

34) This deprivation caused Ms. Ockinga injury and damages in an amount to be determined at trial.

35) 42 U.S.C. §1983 makes CPD Officer Muzquiz liable to Ms. Ockinga in an action at law, suit in equity, or other proper proceeding for redress for a violation of Ms. Ockinga's Fourth Amendment right to be free from excessive force.

PUNITIVE DAMAGES-

36) CPD Officer Muzquiz acted maliciously and wantonly, with malice, recklessness, and/or callous indifference, justifying, in addition to compensatory damages, punitive damages in this case.

**II. SECOND CLAIM FOR RELIEF – DEPRIVATION OF CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. § 1983 – UNLAWFUL SEIZURE – DEFENDANT MUZQUIZ**

37) For this Claim of Relief, Plaintiff incorporates the facts stated herein, which provide the basis for the claim that CPD Officer Muzquiz, while on-duty and acting under color of State law, statute, ordinance, regulation, custom, or usage of the State of Wyoming, deprived Joann Ockinga, Plaintiff and a citizen of the United States and person within the jurisdiction thereof, of Ms. Ockinga's rights, privileges, or immunities secured by the United States Constitution and federal laws, to wit:

38) CPD Officer Muzquiz, while on duty and acting under color of state law, deprived Ms. Ockinga of her Fourth Amendment right to be free of unreasonable seizure by unlawfully handcuffing, arresting, and jailing Ms. Ockinga.

39) This deprivation caused Ms. Ockinga injury and damages in an amount to be determined at trial.

40) 42 U.S.C. §1983 makes CPD Officer Muzquiz liable to Ms. Ockinga in an action at law, suit in equity, or other proper proceeding for redress for a violation of Ms. Ockinga's Fourth Amendment right to be free from unreasonable seizures.

PUNITIVE DAMAGES-

41) CPD Officer Muzquiz acted maliciously and wantonly, with malice, recklessness, and/or callous indifference, justifying, in addition to compensatory damages, punitive damages in this case.

**III. THIRD CLAIM FOR RELIEF – INADEQUATE TRAINING – DEFENDANT CITY OF CHEYENNE**

42) For this Claim of Relief, Plaintiff incorporates the facts stated herein, which provide the basis for the claim that CPD's lack of policies, procedures, and practices that resulted in CPD Officer Muzquiz being inadequately trained.

43) Defendant City of Cheyenne's training program was inadequate to train its employees to carry out their duties. Defendant City of Cheyenne's failure to adequately train its police officers amounted to deliberate indifference to the fact that inaction would obviously result in the violation of both the 4th Amendment right to be free from unreasonable seizures – including excessive force and unlawful arrest. Defendant City of Cheyenne's failure to adequately train proximately caused the violation of Plaintiff's 4th Amendment right to be free from unreasonable seizures. Defendant City of Cheyenne's inadequate training caused Ms. Ockinga's injuries, which were a foreseeable result of CPD's inadequate training.

44) 42 U.S.C. §1983 makes Defendant City of Cheyenne liable to Ms. Ockinga in an action at law, suit in equity, or other proper proceeding for redress for inadequately training its officers that caused a violation of Ms. Ockinga's Fourth Amendment right to be free from unreasonable seizures.

## REQUEST FOR RELIEF

45) WHEREFORE, Plaintiff respectfully requests this Court to grant the following:

1. A trial by jury to decide these claims;

2. Judgment against Defendant for compensatory and punitive damages in an amount consistent with the allegations contained herein and to be proven at trial;

3. Plaintiff's attorney's fees in bringing this action pursuant to 42 U.S.C. 1988(b), including expert fees pursuant to 42 U.S.C. 1988(c);

4. Any other relief the Court deems appropriate.

Respectfully submitted this 25th day of November 2024.

Devon Petersen

Devon Petersen
Wyoming State Bar #6-4480
Fleener Petersen, LLC
506 S. 8th St.
Laramie, WY 82070
(307) 460-4333
devon@fleenerlaw.com
ATTORNEY FOR PLAINTIFF